UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

OSPREY MEDIA, LLC, :

Plaintiff, :

-against- : 24-cv-1662 (JPO)

CONNATIX NATIVE EXCHANGE, INC., : ECF Case

Defendant. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CONNATIX NATIVE EXCHANGE, INC., :

Third-Party Plaintiff, :

-against- :

JOSEPH VELARDO, :

Third-Party Defendant. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**STATEMENT OF PLAINTIFF PURSUANT TO LOCAL CIVIL RULE 56.1**

Plaintiff Osprey Media, LLC respectfully submits the following statement in response to the statement of defendant Connatix Native Exchange, Inc., pursuant to Local Civil Rule 56.1.

1. nStream "stitches" two shorter advertisements together to form a single, longer composite advertisement. Evidence: Ex. 1 [Plock Report] at 4; see Ex. 3 [Rosenblatt Report] ¶ 72.

**Response:**

Admitted, with the understanding that nStream performs other functions. (Ex. AG)

2. nStream's function is designed to provide users a business opportunity; for example, if a 30-second slot is available, it might be more profitable to sell two 15-second advertisements and "stitch" them together to sell as a 30-second ad, rather than selling a single stand-alone 30 second ad. Evidence: Ex. 1 [Plock Report] at 4; Ex. 3 [Rosenblatt Report] ¶ 74.

**Response:**

Admitted.

3.  Osprey Media LLC is a Vermont limited liability company with two members: Joseph Velardo and Robert Verrico. Evidence: Dkt. 1 ¶ 2; Ex. 4 [Osprey Initial Disclosures] at 1-2.

**Response:**

Admitted.

4.  Mr. Velardo is President and Co-Founder of Osprey and is also a third-party defendant in this action. Evidence: Dkt. 1 ¶ 2; Dkt. 17 ¶ 11; Ex. 4 [Osprey Initial Disclosures] at 1; Ex. 5 [Osprey Responses to First Set of Interrogatories] at 3.

**Response:**

Admitted.

5.  Mr. Verrico's only title is member of the limited liability company. Evidence: Ex. 4 [Osprey Initial Disclosures] at 1-2; Ex. 5 [Osprey Responses to First Set of Interrogatories] at 3; Ex. 6 [Velardo Transcript] at 137:6-11.

**Response:**

Admitted.

6.  Osprey has no employees and no other officers, directors, or members. Evidence: Ex. 6 [Velardo Transcript] at 95:7-96:6, 97:21-24.

**Response:**

Admitted.

7.  Mr. Velardo has a degree in marketing and finance from Lehigh University, which he earned in 2000; he has neither a technical degree nor a background in computer programming. Evidence: Ex. 6 [Velardo Transcript] at 12:2-6.

**Response:**

Admitted that Mr. Velardo has a degree in marketing and finance from Lehigh University, which he earned in 2000 and that he does not have a technical degree. Denied that that Mr. Velardo lacks a "background in computer programming," because Mr. Velardo has

worked with computer programming in connection with the development of nStream. (Velardo ¶ 4)

8. To create the nStream software, Mr. Velardo hired a programmer, Jagadish Kamath, who is based in India. Evidence: Dkt 1 ¶ 8; Dkt. 17 ¶ 12; Ex. 6 [Velardo Transcript] at 139:22-140:9.

**Response:**

Admitted, with the understanding that Velardo hired the programmer on behalf of Osprey. (Dkts. 92-7, 92-8)

9. Mr. Kamath completed work on the program on or around April 1, 2021 and was paid between $20,000 and $30,000 for his efforts. Mr. Kamath wrote the nStream code in the programming language JavaScript. Evidence: Ex. 6 [Velardo Transcript] at 127:25-128:8, 145:22-146:10; Ex. 7 [Osprey 000632]; Ex. 8 [Osprey 000009]; Ex. 9 [Osprey 000731].

**Response:**

Admitted.

10. Mr. Kamath transferred his rights, title, and interest in nStream, including but not limited to the copyright, to Osprey through an agreement executed on January 19, 2024. Evidence: Dkt. 1 ¶ 9; Ex. 6 [Velardo Transcript] at 321:10-20.

**Response:**

Admitted that Mr. Kamath transferred certain his rights, title, and interest in nStream, including but not limited to the copyright, to Osprey through an agreement executed on January 19, 2024. Denied that Mr. Kamath transferred all of his rights in that agreement, as he also transferred rights in the agreement executed on March 26, 2024. (Ex. I)

11. In February 2024, Mr. Velardo, on behalf of Osprey, registered the copyright in the nStream source code. Evidence: Dkt. 1 ¶ 10; Ex. 7 [Osprey 000632]; Ex. 10 [Osprey 000621].

**Response:**

Admitted.

12. Connatix is a successful online advertising company that grew from a few founders in 2014 into one of the leading online video and advertising businesses today. Evidence: Ex. 11 [Kashak Transcript] at 10:24-11:3; Ex. 12 [Stern Transcript] at 269:7-14.

**Response:**

Admitted.

13. In 2024, Connatix merged with JW Player to form JWP Connatix, an independent video technology monetization platform. Evidence: Ex. 11 [Kashak Transcript] at 25:8-11; Ex. 16 [Leitman Transcript] at 6:25-7:11.

**Response:**

Admitted, with the understanding that the word "merger" is used in a broad sense.

14. At the time of the events giving rise to this case, Connatix currently had a technical staff of more than 20 people and had written and deployed a program for online video ("OLV") advertising. Evidence: Ex. 6 [Velardo Transcript] at 24:16-18; Ex. 11 [Kashak Transcript] at 45:19-46:5; Ex. 12 [Stern Transcript] at 276:9-13.

**Response:**

Admitted.

15. Connatix developed its CTV platform—called the "CTV Ad Exchange"—by building on its preexisting set of software that it had used for OLV advertisements. Evidence: Ex. 3 [Rosenblatt Report] ¶ 99; Ex. 13 [Apostol Transcript Vol I] at 74:17-75:22.

**Response:**

Denied. The report of Connatix's expert Rosenblatt contains no admissible evidence as to how the CTV Ad Exchange was created. (Dkt. 81 at 10-11/29) Rosenblatt relies exclusively on the testimony of Dor Leitman, who did not have personal knowledge concerning the creation of the CTV AD Exchange. (Ex. X 141:23-142:10; Ex. AF at 26:4-28:4). The CTV Ad Exchange was written by Apostol, who testified that [redacted] (Ex. AA at 77:24-78:14)

16. OLV is similar to CTV, except that OLV refers to video on computers, tablets, and phones, whereas CTV operates on internet-connected televisions. Evidence: Ex. 6 [Velardo Transcript] at 13:25-14:12; Ex. 12 [Stern Transcript] at 14:17-15:7.

**Response:**

Admitted, with the understanding that the word "similar" is so vague that it has little meaning without further definition.

17. The source code for CTV Ad Exchange was written by Ionut Apostol, Connatix's Associate Software Architect, in the software language C# (C "Sharp") and includes many features and functions beyond those included in nStream. Evidence: Ex. 3 [Rosenblatt Report] ¶ 99; Ex. 15 [Apostol 30(b)(6) Transcript Vol. I] at 12:16-15:7; Ex. 13 [Apostol Transcript Vol. I] at 73:18-20.

**Response:**

Admitted that the source code for CTV Ad Exchange was written by Ionut Apostol, Connatix's Associate Software Architect, in the software language C#. Admitted that the CTV Ad Exchange includes features and functions beyond those included in nStream. The word "many" is so vague that is has little meaning without further definition.

18. In 2021, a Connatix employee first introduced Mr. Velardo to Connatix. Evidence: Ex. 17 [Leitman 30(b)(6) Transcript] at 26:16-27:4; Ex. 11 [Kashak Transcript] at 48:7-50:21; Ex. 12 [Stern Transcript] at 45:2-46:5.

**Response:**

Denied. Velardo was first introduced to Connatix in September 2021 by a non-employee broker, Gary Ragusa. (Velardo ¶32; Ex. K at CTX-000063; Ex. W at 45:20; Ex. AD at 49:8-50:8) Subsequently, about a year later, an employee of Connatix reintroduced Velardo to Connatix in September 2022. (Velardo ¶33; Ex. L)

19. Mr. Velardo billed himself as an expert on CTV, so Connatix was interested in hiring him because it believed his purported expertise would help Connatix enter the growing CTV market more quickly. Evidence: Ex. 18 [Caprio Transcript] at 31:2-14, 33:6-35:9; Ex. 19 [CTX 000119]; Ex. 11 [Kashak Transcript] at 89:2-90:6.

**Response:**

Denied. The motivating factor of Connatix in hiring Velardo was [REDACTED] (Exs. C, E and N)

20. Connatix and Mr. Velardo had discussions in both 2021 and 2022 about working together, and the 2022 discussion ultimately led to Connatix offering Mr. Velardo a job in an email offer. Evidence: Ex. 20 [Osprey 000610]; Ex. 21 [CTX-000063].

**Response:**

Admitted, with the understanding that the e-mail offer was a DocuSign. (Ex. D)

21. Mr. Velardo, an agent of Osprey, agreed to license nStream to Connatix. Evidence: Ex. 20 [Osprey 000610]; Ex. 12 [Stern Transcript] at 188:8-189:13; Ex. 6 [Velardo Transcript] at 201:19-202:19.

**Response:**

Denied. Connatix

(Exs. C, E and N) Osprey avoided any license agreement *ab initio* by letter to Connatix dated December 17, 2024. (Ex. U) And as admitted by Connatix in the ordinary course, although Connatix had discussed a license for nStream with Velardo, Connatix never entered into such an agreement. (Exs. G, O)

22. Mr. Velardo accepted all parts of Connatix's offer: (1) an offer for employment; (2) an October 10 start date for his employment; (3) transferring nStream code to Connatix; and (4) licensing and agreeing to sell nStream to Connatix. Evidence: Ex. 20 [Osprey 000610]; Ex. 12 [Stern Transcript] at 288:2-12; Ex. 22 [Chen Transcript] at 75:20-79:15, 91:1-7.

**Response:**

Denied. (Exs. C, E and N) ; Velardo ¶¶37, 39) Velardo only accepted the October 10, 2022 start date and offer of employment in a separate DocuSign document, which was executed later that day. (PX 23) As Connatix admitted, although Connatix had discussed a lease to buy agreement for nStream with Velardo, Connatix never entered into such an agreement. (Exs. G, O)

23. Mr. Velardo then provided Connatix with the nStream computer code, as he had agreed to do. Evidence: Ex. 13 [Apostol Transcript Vol. I] at 42:19-44:6; Ex. 6 [Velardo Transcript] at 202:8-14.

**Response:**

Denied. While Velardo caused Osprey's developer to provide the nStream source code to Connatix, Connatix [redacted] (Exs. N, C, E)

24. In October 2022, Mr. Velardo started working for Connatix to head its CTV efforts under the title "Director, Head of CTV Strategy and Partnerships" at Connatix. Evidence: Ex. 6 [Velardo Transcript] at 35:17-19; Ex. 23 [Osprey 000612 000613].

**Response:**

Admitted.

25. He was to be paid on the order of $275,000 (including a bonus) per year in that position. Evidence: Ex. 23 [Osprey 000612-000613].

**Response:**

Admitted.

26. Connatix tested nStream and determined it did not work well enough for Connatix's high-speed on-line advertising requirements. Evidence: Ex. 17 [Leitman 30(b)(6) Tr.] at 9:24-10:15; Ex. 16 [Leitman Transcript] at 29:13-31:1.

**Response:**

Denied. Connatix [redacted]

(Ex. Y at 67:24-68:16; 72:20-73:17). Leitman has no personal knowledge of such alleged testing. (Ex. AC at 23:4-14)

27. nStream was not scalable, meaning that the code was not sufficiently robust programming to enable it to be used for the large number of advertisers with whom Connatix does business. Evidence: Ex. 14 [Apostol Transcript Vol. II] at 20:16-23:20; Ex. 16 [Leitman Transcript] at 29:13-31:1.

**Response:**

Denied. Connatix

(Ex. Y at 67:24-68:16; 72:20-73:17). Leitman has no personal knowledge of such alleged testing. (Ex. AC at 23:4-14)

28. Because of nStream's shortcomings, Connatix decided to decommission nStream in early 2023. Since 2023, Connatix has used only the CTV Ad Exchange for its CTV advertising. Evidence: Ex. 13 [Apostol Transcript Vol. I] at 45:3-5, 127:3-23; Ex. 14 [Apostol Transcript Vol. II] at 20:16-23:20; Ex. 24 [Osprey 000673]; Ex. 12 [Stern Transcript] at 203:14-204:13.

**Response:**

Denied that Connatix decided to decommission nStream because of nStream's shortcomings. (Ex. Y at 67:24-68:16; 72:20-73:17; Ex. AC at 23:4-14) Admitted that, since 2023, Connatix has used only the CTV Ad Exchange for its CTV advertising.

29. Mr. Velardo's representations concerning his alleged expertise proved to be overstated: he missed his revenue targets, and after a year of employment, Connatix terminated his employment. Evidence: Ex. 18 [Caprio Transcript] at 9:5-25, 27:4-28:17, 36:21-38:23, 41:24 42:9, 69:16-70:7; Ex. 12 [Stern Transcript] at 279:16-280:2; Ex. 25 [CTX 000696]; Ex. 26 [Osprey 001395].

**Response:**

Denied. Connatix (Ex. O; " ") Connatix fired him on September 18, 2023. (Velardo ¶48) Connatix's assertion that Velardo was not doing his job is a pretext, belied by the fact that (i) Connatix never gave Velardo a performance improvement plan ("PIP") in advance of deciding on or before August 1, 2023, to fire him, and (ii) Connatix attempted to create a paper trial concerning Velardo's job performance after it had decided to fire him. Specifically, Velardo's

[redacted] (Ex. P) and [redacted] (Ex. O at CTX-000556)

30. It was only after his dismissal from Connatix that Mr. Velardo first claimed that the CTV Ad Exchange Program infringed any copyright in nStream. Evidence: Ex. 6 [Velardo Transcript] at 55:5-56:9.

**Response:**

Admitted.

* * * * * * *

Osprey submits that there is at least a genuine as to the following material facts.

1. Since 2015, Velardo has worked in the CTV advertising business. (Velardo ¶ 2)

2. During that time, Velardo has observed certain inefficiencies in the market for CTV ads. (Velardo ¶ 2)

3. For example, Velardo has observed that a streaming service may charge less to place one 30 second ad than to place two 15 second ads. (Velardo ¶2)

4. In 2019, Velardo contacted his prior employer, Robert Verrico ("Verrico"), an experienced entrepreneur in the digital advertising space, and discussed opportunities in the CTV advertising business. (Velardo ¶3)

5. Velardo and Verrico formed Osprey later in 2019, as 50-50 partners. (Velardo ¶3)

6. On behalf of Osprey, Velardo commissioned a developer in India to create a computer program that ultimately exploited a specific arbitrage opportunity. (Velardo ¶4)

7. That computer program, now named nStream, automated the process of receiving a request for an ad from a streaming platform, acquiring two separate ads, electronically joining them, and providing them to the streaming platform as one ad. (Velardo ¶4)

8. No one had previously sought to exploit this arbitrage opportunity by automating the process of stitching together two ads into one ad. (Velardo ¶4)

9. There are alternative ways to exploit arbitrage opportunities in the market for delivering CTV ads, many of which Velardo considered before nStream was complete and all of which he considered before this litigation began. (Velardo ¶¶5- 28)

10. A working version of nStream was completed by March 2020. (Velardo ¶29)

11. In 2020 and 2021, Osprey used nStream to execute CTV ad campaigns and generated about $100,000 in revenue. (Velardo ¶30)

12. COVID and other factors, however, led Osprey in 2020 to look for a buyer for nStream. (Velardo ¶31)

13. In 2021, while Osprey was looking for a buyer for nStream, [REDACTED] (Ex. K)

14. At that time, Connatix brokered advertisements for online websites, and had formed a small group to attempt to broker the delivery of CTV ads. (Ex. AD at 32:24-33:12-15)

15. But this effort to act as a middleman – without a way to add value to any transaction – [REDACTED] (Ex. AD at 29:24-31:6)

16. In September 2021, a [REDACTED] (Velardo ¶32; Ex. K at CTX-000063)

17. On September 22, 2021, Velardo gave a presentation to Connatix concerning nStream. (Ex. K at CTX-000063; Velardo ¶32)

18. After the presentation, Oren Stern ("Stern"), COO of Connatix, [REDACTED] (Ex. K at CTX-000064)

19. In September of 2022, the parties were reintroduced, when an employee of Connatix met Velardo. (Velardo ¶33)

20. The Connatix employee set up a video conference for September 15, 2022, to allow some senior managers of Connatix – Stern, President Jenn Chen ("Chen"), and CTO Dor Leitman ("Leitman") – to hear Velardo's presentation concerning nStream. (Velardo ¶33; Ex. L)

21. Velardo's September 15, 2022, presentation [REDACTED] (Ex. M)

22. After this briefing, [REDACTED] (Ex. M)

23. At his deposition, Kashak testified that the person "super excited" was not Stern, but Velardo. (Ex. AD at 56:17-57:16)

24. On Monday, September 19, 2022, Velardo again presented nStream to the senior managers of Connatix, including Kashak, Stern, Chen and Leitman. (Velardo ¶34; Ex. 10)

25. Verrico, Velardo's partner in Osprey, joined the September 19, 2022, presentation. (Verrico ¶4; Velardo ¶34)

26. Osprey's PowerPoint for the presentation listed Verrico as a "co-founder" of Osprey. (Velardo ¶34; Ex. B at Osprey 000597, 000602)

27. After this presentation, [REDACTED] (Ex. N)

28. Chen [REDACTED] (Ex. N)

29. On September 19, 2022, Chen [REDACTED]

[redacted]

(Ex. N)

30. Leitman [redacted] " (Ex. N)

31. On September 19, 2022, Leitman wrote:

[redacted]

(Ex. N)

32. After Velardo's presentation, [redacted] (Ex. N)

33. But, Kashak [redacted] " (Ex. N)

34. Kashak [redacted] (Ex. N)

35. So, Kashak hatched a Three Phase Plan: Phase One was [redacted] Phase Two was [redacted] Phase Three was [redacted] (Ex. N)

36. On September 19, 2022, Kashak [redacted]

[redacted]

(Ex. N)

37. At his deposition, Kashak testified that he did not remember why he wanted "a more private conversation" with Velardo. (Ex. AD at 84:19-85:6)

38. To execute Phase One of Kashak's plan, Stern emailed Velardo on September 29, 2022:

> "Following our call yesterday, you will soon receive a docusign [sic] with the offer letter. We have set the start date to October 10th. Please let us know if this works for you. **We have also started working on the lease to buy agreement for the Nstream [sic] technology.** Lease to buy for 100k on a $1cpm basis will be the main terms. Once we reach 100k, connatix [sic] officially owns the technology.
>
> Additionally, we will work with Nstream developer on integration as soon as possible. We will use the connatix [sic] server to serve it. Once you sign the offer letter, I suggest we will jump on a call with our tech team and your developer to start plan the migration
>
> Looking forward to start working with you," (Emphasis added.) (Velardo ¶35; Ex. C)

39. Minutes later, Velardo responded:

> "Good morning. This is great news. I am excited to get this going and begin my next phase with Connatix.
>
> I agree and will work to connect Jagadish with the team.
>
> Thank you," (Velardo ¶35; Ex. C)

40. Later that day, the HR department of Connatix sent Velardo an at-will employment agreement, which Velardo executed by DocuSign. (Velardo ¶39; Ex. D)

41. Through that at-will employment agreement, Connatix effectively froze out Verrico from future communications.

42. Stern's statement in the email that "We have also started working on the lease to buy agreement for the Nstream [sic] technology" was a lie. (Ex. S)

43. The day before, September 28, 2022, Stern [redacted] (Ex. S)

44. After Stern's message on September 28, 2022, no employee of Connatix, or anyone acting on behalf of Connatix, made any effort whatsoever to even start drafting a lease to buy agreement. (Ex.W at 86:2-16)

45. To execute Phase Two of Kashak's plan, Leitman [redacted]

(Velardo ¶40; Ex. E)

46. On or about October 6, 2022, Connatix's efforts to trick Velardo succeeded and Velardo caused Osprey's developer in India to transfer the nStream source code to Connatix. (Velardo ¶41)

47. After Connatix had the nStream source code, Connatix never had any intent to agree to pay Osprey (or Velardo) anything in connection with a lease to buy agreement for nStream. (Ex. W at 86:2-16)

48. If Connatix had represented that it had no interest in a lease to buy agreement for nStream, Velardo would not have provided the nStream source code to Connatix. (Velardo ¶43)

49. If Verrico had known that Connatix had no interest in a lease to buy agreement, Verrico would have made sure that Velardo would not have provided Connatix with the nStream source code. (Verrico ¶7)

50. To execute Phase Three, Connatix then successfully integrated nStream into its system and generated approximately $5,500 in revenue using nStream. (Dkt. 11 at ¶27)

51. Connatix created no documents whatsoever concerning its claimed testing of nStream and Connatix created no documents whatsoever concerning any deficiencies in nStream's performance. (Dunnegan Ex. Y at 67:24-68:16; 72:20-73:17, and Ex. AC at 23:4-14)

52. Connatix then wrote the CTV Ad Exchange in the programming language ███ (Dkt. 90-1 at ¶ 17; Ex. Y at 64:15-17; 81:10-15)

53. The Connatix developer who wrote the CTV Ad Exchange, Ionut Apostol ("Apostol"), admitted in the following communication with Velardo that the CTV Ad Exchange was based upon nStream.

J **Joseph Velardo** 3:03 PM
Ok. Makes sense. Are you using nStream as a basis for the stitcher?

**Ionut Apostol** 3:03 PM
yes, but the code is written in another programming language

(Velardo ¶45; Ex. F)

54. At his deposition, Apostol testified that ████████████████████ ████████████████████████████████████

"Q. ████████████████████████████████ ████████████

████████████" (Ex. Z at 104:5-8)



16

[redacted]

[redacted]

[redacted]

56. Velardo continued his work at Connatix after the development of the CTV Ad Exchange. (Velardo ¶46)

57. But though the summer of 2023, [redacted] (Velardo ¶47; Ex. R)

58. [redacted] (Ex. O)

59. On or before August 1, 2023, [redacted]

[redacted] (Ex. O at CTX-000554)

60. On August 2, 2023, Stern replied:

[redacted] ” (Ex. O at CTX-000554)

61. Chen [redacted] (Ex. Q)

62. On August 14, 2023, Chen [redacted]

[redacted]

[redacted]" (Ex. O at CTX-000556)

63. On September 1, 2023, an employee of Connatix [redacted]

64. Connatix fired Velardo on September 18, 2023. (Velardo ¶48)

65. Connatix's current assertion that Velardo was not doing his job is a pretext, belied by the fact that (i) Velardo's immediate supervisor, [redacted] (Dunnegan Ex. P), [redacted] (Ex. O at CTX-000566; Ex. P), [redacted]

66. In connection with Velardo's firing, and before Velardo had asserted any claim against Connatix, Connatix sent an unsolicited document to Velardo on September 18, 2023, that provided:

> "A. Connatix employed Velardo from October 10, 2022, through September 30, 2023.
>
> B. Prior to Velardo's commencing employment with Connatix, Velardo and Connatix discussed an arrangement under which Velardo would license to Connatix certain technology that enabled the user to "stitch" together two ads and replace them into an advertising pod on CTV (the "Velardo Technology") in consideration for $1.00 per CPM.
>
> C. Velardo and Connatix did not enter into a definitive agreement concerning the Velardo Technology." (Emphasis added.) (Velardo ¶49; Ex. G at Osprey-000664)

67. Velardo never executed that document sent to him on September 18, 2023. (Velardo ¶50)

68. Connatix never paid Osprey (or Velardo) any money for the use or acquisition of nStream, either pursuant to the lease to buy agreement or otherwise. (Velardo ¶51)

69. After Connatix fired Velardo in September 2023, [redacted] (Ex. R)

70. After formally acquiring the rights of the developer (Velardo ¶ 2; Exs. H and I), after registering the copyright in nStream (Velardo ¶53; Ex. J), and after demanding that Connatix allow an inspection of its source code (Ex. T), Osprey filed this action on March 5, 2024. (Velardo ¶54; Dkt. 1)

71. After learning through discovery that Connatix planned to trick Velardo into providing the nStream source code to Connatix by falsely representing that it had already started working on a lease to buy agreement, and that Connatix had no intention of purchasing nStream, Osprey sent Connatix on December 17, 2024, a notice rescinding *ab initio* any license concerning nStream. (Ex. U) (Velardo ¶¶55-56)

Dated: New York, New York
October 27, 2025

DUNNEGAN & SCILEPPI LLC

By William Dunnegan

William Dunnegan (WD9316)
wd@dunnegan.com
Richard Weiss (RW4039)
rw@dunnegan.com
Attorneys for Osprey Media, LLC
and Joseph Velardo
437 Madison Avenue, 24th Floor
New York, New York 10022