UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OSPREY MEDIA, LLC,
Plaintiff,

-v-

CONNATIX NATIVE EXCHANGE, INC.,
Defendant.

24-CV-1662 (JPO)

**SEALED**
OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Osprey Media, LLC ("Osprey") brings this action against Defendant Connatix Native Exchange, Inc. ("Connatix"), asserting a claim for copyright infringement of its nStream program. (ECF No. 1.) Now before the Court are Osprey's motion to preclude expert testimony (ECF No. 79) and Connatix's motion for summary judgment (ECF No. 90). For the reasons that follow, Osprey's motion to preclude expert testimony is granted in part and Connatix's motion for summary judgment is granted in full.

## I. Factual Background

Unless otherwise noted, the following facts are undisputed and are derived from Connatix's Rule 56.1 statement (ECF No. 90-1 ("Def.'s SOF")), Osprey's response to Connatix's Rule 56.1 statement (ECF No. 104 ("Pl.'s SOF Opp.")), and the underlying evidence cited therein. The Court construes all evidence in the light most favorable to the non-moving party and draws all inferences in the non-moving party's favor. *See Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003).

This case concerns software called nStream, a program that "stitches" together two shorter advertisements to form a single, longer advertisement. (Def.'s SOF ¶ 1 (quotation marks omitted).) This function allows content providers to sell two fifteen-second advertisements to fill

up a thirty-second slot, rather than one standalone thirty-second advertisement. (*Id.* ¶ 2.) Joseph Velardo, the President and Co-Founder of Osprey, hired a programmer, Jagadish Kamath, to create the nStream software. (*Id.* ¶¶ 3-4, 8.) Kamath completed the nStream code in JavaScript around April 2021 and transferred the copyright to the program to Osprey in January 2024. (*Id.* ¶¶ 9-10.)

Connatix is a leading online advertising company. (*Id.* ¶ 12.) In September 2022, Connatix offered Velardo a job, which Velardo accepted. (*Id.* ¶ 20; ECF No. 92-12.) In an email extending the job offer, Oren Stern, the Founder and Chief Operating Officer of Connatix, told Velardo that Connatix had "started working on the lease to buy agreement for the Nstream [*sic*] technology," that Connatix "will work with [the] Nstream [*sic*] developer [*i.e.*, Kamath] on integration as soon as possible," and that Velardo and Connatix should "jump on a call with [Connatix's] tech team and [Kamath] to start [to] plan the migration." (ECF No. 92-12 at 2.) Velardo responded: "I agree and will work to connect [Kamath] with the team." (*Id.*)

In October 2022, Velardo started working for Connatix as Director, Head of CTV Strategy and Partnerships.[1] (Def.'s SOF ¶ 24.) Connatix had a technical staff of over twenty people and had already deployed a program for online video advertising. (*Id.* ¶ 14.) At some point, Velardo gave Ionus Apostol, an engineer at Connatix, access to nStream's source code. (*Id.* ¶ 23[2]; ECF No. 92-5 at 202; ECF No. 93-3 at 43-44.) Apostol then developed an advertising platform for TV streaming services, called the "CTV Ad Exchange," whose source code was

---

[1] "CTV" is "Connected TV"—that is, television programming that is streamed over the internet rather than provided via traditional cable or satellite. (*See, e.g.*, ECF No. 91 at 4; ECF No. 101 at 7-8.)

[2] Osprey denies that Velardo "agreed to" provide Connatix with the nStream source code—arguing that he was tricked into doing so by the prospect of a lease-to-buy agreement—but does not deny that Velardo gave Apostol access to the source code. (*See* Pl.'s SOF Opp. ¶ 23.)

written in the software language C#. (Def.'s SOF ¶¶ 16-17.) In 2023, Connatix decommissioned nStream and used only the CTV Ad Exchange program for its TV streaming advertising. (*Id.* ¶ 28.[3]) In September 2023, after about a year of employment, Connatix fired Velardo. (*Id.* ¶ 29.) In February 2024, Velardo registered the copyright in the nStream source code on behalf of Osprey. (*Id.* ¶ 11.)

## II. Procedural History

Osprey filed suit against Connatix on March 5, 2024, asserting that Connatix's CTV Ad Exchange infringed the copyright to Osprey's nStream program. (*See generally* ECF No. 1.) After multiple extensions and denial of a request for additional discovery, discovery concluded on September 9, 2025. (ECF Nos. 71-73.) On October 6, 2025, Osprey moved to preclude testimony from two of Connatix's experts. (ECF No. 79.) That same day, Connatix filed a motion for summary judgment (ECF No. 90), alongside an accompanying memorandum of law (ECF No. 91 ("Mem.")) and a Rule 56.1 Statement (Def.'s SOF). Osprey filed an opposition on October 27, 2025 (ECF No. 101 ("Opp.")), alongside a counterstatement to Connatix's Rule 56.1 Statement (Pl.'s SOF Opp.). Connatix filed its reply on November 13, 2025. (ECF No. 113.)

## III. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is "material" if it might "affect the outcome of the suit under the governing law," and a factual dispute is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)

---

[3] Osprey disputes Connatix's stated reason behind its decision to decommission nStream, but admits that, "since 2023, Connatix has used only the CTV Ad Exchange for its CTV advertising." (Pl.'s SOF Opp. ¶ 28.)

(quotation marks omitted). The moving party bears "the burden of demonstrating that no material fact exists." *Miner v. Clinton Cnty., New York*, 541 F.3d 464, 471 (2d Cir. 2008). "In considering a summary judgment motion, the Court 'is required to view the record in the light most favorable to the party against which summary judgment is contemplated and to resolve all ambiguities and draw all factual inferences in favor of that party.'" *Martinez v. Staten Island Univ. Hosp.*, 814 F. Supp. 3d 380, 393 (E.D.N.Y. 2026) (quoting *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178 (2d Cir. 2008)).

To defeat a motion for summary judgment, "[t]he non-moving party may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). "Rather, the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 112 (S.D.N.Y. 2012). "To avoid summary judgment, all that is required of the non-moving party is a showing of sufficient evidence supporting the claimed factual dispute as to require a judge or jury's resolution of the parties' differing versions of the truth." *Id.*

## IV. Discussion

### A. Motion to Preclude

Osprey moves to exclude the testimony of two of Connatix's experts, William Rosenblatt and Brian Palmer. (ECF No. 79.) "Because the issue of what expert testimony is admissible bears on the Court's analysis of [Connatix's] motion for summary judgment, the Court will first address [Osprey's] motion[] to preclude expert testimony." *In re Fosamax Prods. Liab. Litig.*, 807 F. Supp. 2d 168, 179 (S.D.N.Y. 2011), *aff'd*, 707 F.3d 189 (2d Cir. 2013), and *aff'd*, 509 F. App'x 69 (2d Cir. 2013); *see also Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998) ("On a summary judgment motion, the district court properly considers only evidence that would be admissible at trial.").

Under Federal Rule of Evidence 702, a qualified witness may testify as an expert so long as his "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," his testimony is based on sufficient data and reliable principles and methods, and he reliably applies the principles and methods to the facts of the case. Fed. R. Evid. 702. The Court relies only on Rosenblatt's comparison of the CTV Ad Exchange and nStream programs and his application of the "abstraction-filtration-comparison" ("AFC") test in evaluating Connatix's motion for summary judgment. (*See* ECF No. 83, Ex. A ("Rosenblatt Rep.") ¶¶ 40-43.) Accordingly, it addresses Osprey's motion to exclude expert testimony only as it pertains to these portions of Rosenblatt's report and otherwise denies the motion as moot.

Connatix, as the proponent of Rosenblatt's expert testimony, "has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007). As an initial matter, Osprey seeks to exclude Rosenblatt's testimony insofar as it constitutes impermissible legal conclusion. (ECF No. 81 at 8.) "As a general rule[,] an expert's testimony on issues of law is inadmiss[i]ble." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). "[A]lthough an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts." *Id.* The Second Circuit, however, has clarified that "expert testimony may be used to assist the fact finder in ascertaining whether the defendant had copied any part of the plaintiff's work," particularly in cases involving computer programs, which "are likely to be somewhat impenetrable by lay observers." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 713 (2d Cir. 1992); *see also id.* ("[W]e leave it to the

discretion of the district court to decide to what extent, if any, expert opinion, regarding the highly technical nature of computer programs, is warranted in a given case.”).

Osprey does not point to any specific portions of Rosenblatt’s report that it contends constitute testimony on issues of law. Indeed, Rosenblatt acknowledges at the outset of his report that his “analysis is not intended to represent legal opinions,” and clarifies during his discussions of relevant legal standards that those standards were provided to him by counsel. (*See* Rosenblatt Rep. ¶¶ 34, 86, 98, 111, 199.) Moreover, Rosenblatt’s comparison of the source codes and structures of the CTV Ad Exchange and nStream programs, as well as his highly technical application of the AFC test endorsed by the Second Circuit for evaluating claims of non-literal copyright infringement, *see Altai*, 982 F.2d at 706, plainly “help the trier of fact to understand the evidence or to determine a fact in issue.” Fed. R. Evid. 702. Even so, Osprey is correct that some parts of Rosenblatt’s report—specifically, those in which Rosenblatt gives his opinion as to whether copyright infringement has occurred—impermissibly weigh in on issues of law. (*See, e.g.*, Rosenblatt Rep. ¶ 98 (“[I]t is my opinion that no infringement of protectible elements has taken place.”).) *Cf. Degelman Indus. Ltd. v. Pro-Tech Welding & Fabrication, Inc.*, No. 06-CV-6346, 2011 WL 6754051, at *9 (W.D.N.Y. May 27, 2011) (concluding that an expert “should not be allowed to opine on the ultimate issue of infringement because the issue is for the fact finder alone to decide,” but permitting testimony “regarding similarities/dissimilarities between the [patents at issue] and the accused products”), *report and recommendation adopted*, No. 06-CV-6346T, 2011 WL 6752565 (W.D.N.Y. Dec. 23, 2011). The Court therefore strikes paragraphs 33(a), 87, 96, 98, 200, and 208 of Rosenblatt’s expert report and does not consider those paragraphs in its summary judgment analysis.

Osprey also seeks to preclude Rosenblatt's comparison of the CTV Ad Exchange and nStream programs for the purposes of evaluating literal infringement. (ECF No. 81 at 9.) Because "Osprey is not claiming literal infringement," Osprey argues, this opinion is irrelevant under Federal Rule of Evidence 402. (*Id.* at 9.) In its opposition to Connatix's motion for summary judgment, however, Osprey asserts that "Connatix actually copied the structure of the nStream source code to make the Connatix Ad Exchange"—a literal infringement claim. (Opp. at 18.) Thus, to the extent Osprey now seeks to bring a literal infringement claim, Rosenblatt's opinion on literal infringement cannot be excluded as irrelevant.

Next, Osprey moves to exclude Rosenblatt's application of the "abstraction" and "filtration" steps of the AFC test. (ECF No. 81 at 12-13.) Specifically, Osprey faults Rosenblatt for (1) not discussing alternative methods for implementing the idea behind nStream at the abstraction phase (*id.* at 12), (2) examining the steps of the nStream program individually, instead of in combination, at the filtration phase (*id.* at 13), and (3) failing to use a reliable method for determining which steps constitute "methods of operation" at the filtration phase (*id.* at 15). These objections are unavailing. Rosenblatt's decision not to discuss alternative methods of implementation does not render his expert report deficient, particularly where Rosenblatt's "abstraction" analysis is otherwise comprehensive. (*See* Rosenblatt Rep. ¶¶ 102-110.) As Connatix points out, Osprey also had ample opportunity to cross-examine Rosenblatt on this point during his deposition, and it did so. (*See, e.g.*, ECF No. 82-2 at 55-61.) Nor is Osprey correct that Rosenblatt failed to analyze nStream's steps in combination. (*See* Rosenblatt Rep. ¶¶ 106-08, 180-87.) Rather, Rosenblatt concluded that, because the idea behind nStream could be implemented only with these steps in this specific ordered combination, it was unprotectable under the doctrine of merger. (*Id.* ¶¶ 108, 180-87.) *See MyWebGrocer, LLC v. Hometown Info,*

*Inc.*, 375 F.3d 190, 194 (2d Cir. 2004) ("The merger doctrine bars a copyright of even original expression when there is essentially only one way to express an idea and thus the idea and its expression are inseparable." (quotation marks omitted)). Finally, although Osprey criticizes Rosenblatt's filtration analysis for simply "taking the legal principles that counsel for Connatix provided to him and applying those principles to facts set forth in the report of Osprey's expert" to determine which steps are protectable (ECF No. 81 at 15), such an exercise—which depends on Rosenblatt's technical knowledge of standard programming practices and applications—is precisely within the purview of an expert. *See eScholar, LLC v. Otis Educ. Sys., Inc.*, No. 04-CV-4051, 2005 WL 2977569, at *24 (S.D.N.Y. Nov. 3, 2005) ("Expert testimony may be required to determine if any elements are necessary to the function of the works in question, and thus unprotectable.").

For these reasons, Osprey's motion to exclude the testimony of William Rosenblatt and Brian Palmer is granted in part. The Court strikes paragraphs 33(a), 87, 96, 98, 200, and 208 of Rosenblatt's expert report and does not consider those paragraphs in its summary judgment analysis. Osprey's motion is otherwise denied.

**B. Copyright Infringement**

To demonstrate copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "Copying may be shown by direct evidence or by showing that (1) the defendant had access to the plaintiff's copyrighted work and (2) that defendant's work is substantially similar to the plaintiff's copyrightable material." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 963 (2d Cir. 1997) (quotation marks omitted). Osprey contends that Connatix infringed the literal "structure" of the nStream program, as well as the program's non-literal, protected expression. (Opp. at 18-19.) Because

there is no dispute that Osprey owns a valid copyright in nStream and that Connatix had access to nStream's source code (*see* Def.'s SOF ¶¶ 10-11, 23), the only question before the Court is whether the CTV Ad Exchange "is substantially similar" to nStream. *Softel, Inc.*, 118 F.3d at 963 (quotation marks omitted).

**1. Literal Infringement**

As a threshold matter, and as noted above, Osprey's argument that Connatix copied the "structure" of nStream in developing the CTV Ad Exchange is contrary to Osprey's assertion in an earlier filing that it "is not claiming literal infringement." (*Compare* Opp. at 18 *with* ECF No. 81 at 9.) "Generally, a party may not freely take inconsistent positions in a lawsuit and simply ignore the effects of a prior filed document." *Schreiber v. Friedman*, No. 15-CV-6861, 2017 WL 5564114, at *7 (E.D.N.Y. Mar. 31, 2017) (quotation marks omitted). Even setting aside any estoppel concerns, however, Osprey does not present enough evidence to create a genuine dispute of material fact as to whether Connatix literally infringed nStream's source code or structure. Osprey relies in the main on a message exchange between Apostol and Velardo, in which Apostol confirms that he is "using nStream as a basis for the stitcher," as evidence of literal infringement. (ECF No. 106-6 at 3.). But "[i]t is well established . . . that in order to sustain a claim of copyright infringement the claimant is required to demonstrate a substantial similarity between the copyrighted work and the alleged copy." *Ideal Toy Corp. v. Fab-Lu Ltd. (Inc.)*, 360 F.2d 1021, 1022 (2d Cir. 1966). Osprey cites no evidence, either in its Rule 56.1 statement or in its opposition, that demonstrates any similarities, structural or otherwise, between nStream and the CTV Ad Exchange. On the other side of the ledger, Rosenblatt's report concludes that the CTV Ad Exchange does not contain code that resembles the code in nStream, even when converted from JavaScript to C#, and that the two programs are structurally distinct. (Rosenblatt Rep. ¶¶ 88-96.) This testimony is wholly unrebutted by Osprey's expert, Cory

Plock, who did not compare any aspect of the CTV Ad Exchange to any aspect of nStream in his expert report. (ECF No. 92-2 at 77-78; *see generally* ECF No. 92-1.)

At the summary judgment stage, a district court is "is not required to scour the record on its own in a search for evidence when the plaintiff[] fail[s] to present it." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 125 (2d Cir. 2013) (quotation marks omitted). Because Osprey has not presented sufficient evidence to support a finding of literal copyright infringement, Connatix's motion for summary judgment is granted as to this claim.

**2. Non-Literal Infringement**

In the Second Circuit, it is axiomatic that "non-literal similarity of computer programs can constitute copyright infringement." *Softel*, 118 F.3d at 963. To separate out the non-literal aspects of a computer code that are protectable by copyright, the Second Circuit has endorsed the three-part AFC test. *See Altai*, 982 F.2d at 706. At the first stage, "abstraction," "a court should dissect the allegedly copied program's structure and isolate each level of abstraction contained within it." *Id.* at 707. "The purpose of this exercise is to provide an anatomical diagram of the allegedly infringed program." *Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408, 416 (S.D.N.Y. 1999). The next stage, "filtration," "entails examining the structural components at each level of abstraction to determine whether their particular inclusion at that level was 'idea' or was dictated by considerations of efficiency, so as to be necessarily incidental to that idea; required by factors external to the program itself; or taken from the public domain and hence is nonprotectable expression." *Altai*, 982 F.2d at 707. "Once a court has sifted out all elements of the allegedly infringed program which are 'ideas' or are dictated by efficiency or external factors, or taken from the public domain, there may remain a core of protectable expression." *Id.* at 710. At the third and final "comparison" stage, the court "focuses on whether the defendant copied any

aspect of this protected expression, as well as an assessment of the copied portion's relative importance with respect to the plaintiff's overall program." *Id.*

Osprey argues that Connatix infringed the "non-literal expression of" nStream. (Opp. at 19-20.) But on this claim, too, Osprey fails to marshal sufficient evidence to create a genuine dispute of material fact. Although Osprey concedes that the AFC test applies to its non-literal infringement claim (*id.* at 20), Osprey's sole expert did not perform the AFC test, despite having knowledge of the test and having applied it in the past. (*See id*. at 20; ECF No. 92-2 at 78-79.) In fact, Plock did not compare any aspect of CTV Ad Exchange to any aspect of nStream: His report merely identifies the "major functions" of nStream and the "main steps" it takes "to fulfill its primary purpose." (ECF No. 92-1 at 9-19; *see also* ECF No. 92-2 at 78.) Even if the Court construes this portion of the report as the "abstraction" step of the AFC test, Plock nowhere filters out non-protectable material—elements of the program that are "ideas," dictated by efficiency or external factors, or taken from the public domain—or compares the remaining core of protectable material to the CTV Ad Exchange. Nor does Osprey point to any other witness who has performed the AFC test. Rosenblatt, on the other hand, does perform a detailed AFC test, from which he concludes that nStream, as abstracted, contains no protectable expressive components that could be infringed. (*See* Rosenblatt Rep. ¶¶ 102-199.)

Osprey's failure to conduct the AFC test is fatal to its claim of non-literal copyright infringement. Courts routinely grant motions for summary judgment where a plaintiff's expert fails to perform the AFC test in a non-literal copyright infringement case. *See, e.g.*, *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 275 (6th Cir. 2010) (affirming grant of summary judgment where "[a]ll of the evidence offered by" the plaintiff, including its expert report, "clearly lacks the abstraction and filtration elements"); *Pepper v. Int'l Gaming Sys., LLC*,

312 F. Supp. 2d 853, 861 (N.D. Miss. 2004) (granting summary judgment because "[t]he plaintiff has no expert to help explain to the court and the jury how to apply the abstraction/filtration/comparison test to the computer programs in the instant case"); *cf. Macro Niche Software, Inc. v. 4 Imaging Sols., L.L.C.*, No. 12-CV-2293, 2013 WL 12140417, at *5 (S.D. Tex. Dec. 18, 2013) ("If a plaintiff fails to perform the abstraction-filtration-comparison analysis, the defendant is entitled to summary judgment."). Osprey retorts that "there is no requirement that an expert apply this test," and that once "Plock explains in English the structure of nStream" and "Apostol explains in English the structure of the CTV Ad Exchange," jurors can assess their similarities for themselves. (Opp. at 20-21.) But Osprey points to no case in any circuit suggesting that the strict requirements of *Altai* may be satisfied by presenting non-expert testimony about the "structure" of two programs and letting lay jurors draw similarities between them. This misapplication of the AFC test also omits the "filtration" step entirely, which is critical for circumscribing in the first instance the scope of material that is protectable under copyright. *See Altai*, 982 F.2d at 707.

Osprey purports to apply the AFC test in its opposition, ostensibly to remedy this evidentiary gap. But its briefing only highlights the dearth of evidence for its non-literal infringement claim. At the "abstraction" step, Osprey makes no mention of Plock's expert report, instead citing scattershot snippets of evidence about the purpose of nStream and the "numerous ways to automate" that purpose before summarily concluding that all "18 functions in nStream, and their order, should not be excluded from the comparison step." (Opp. at 22.) Its "filtration" analysis is similarly conclusory. Osprey declares, without citation, that the development of nStream "required a significant amount of creativity and background knowledge" and references Plock's expert report as an appropriate starting point for a filtration

analysis because it provides "an explanation of the functions of the program, and their order." (*Id.* at 22, 24.) But nowhere does Osprey actually perform the "filtration" step or point to evidence that would support a filtration analysis. At the final "comparison" step, Osprey claims, again without reference to the record, that Plock's report, "with the admissions of Apostol, demonstrates that Connatix's CTV Ad Exchange performs 17 of the 18 functions of nStream." (*Id.* at 24.) Again, Osprey relies on circumstantial evidence—here, Apostol's inexperience in the TV streaming advertising market when he was tasked with developing the CTV Ad Exchange—to support its claim of copyright infringement (*id.* at 25; ECF No. 109-12 at 39-40), and fails to perform the "comparison" step of the AFC test at all. Osprey also relies on its assertion that Rosenblatt failed to compare the "functions" of the two programs in his report (Opp. at 24), but this mischaracterizes Rosenblatt's testimony,[4] and in any event, does not cure Osprey's own lack of evidence for its non-literal infringement claim.

A court applying *Altai* need only "analyze evidence properly brought before it by a party." *Softel*, 118 F.3d at 965 n.9. It is not required to "conduct its own inquiry" of the plaintiff's evidence and perform the AFC test *sua sponte*. *Id.* Osprey presents no evidence to the Court to indicate that an AFC test has been performed by its expert or that the record could otherwise support a finding of non-literal copyright infringement. And the AFC test Osprey purports to conduct in its opposition brief, supported by virtually no relevant record cites, plainly falls short of the highly technical, three-part inquiry contemplated by the Second Circuit in *Altai.* "Absent an abstraction and filtration analysis, Defendant[] [is] entitled to summary judgment on

[4] Rosenblatt agreed that he did not express any opinion about the similarities of the "functions" of nStream and the CTV Ad Exchange, but that he did express opinions about the "expressions of the functions" of those programs, which are the proper subject of an AFC test. (ECF No. 107-22 at 67.)

the copyright claim." *Macro Niche Software*, 2013 WL 12140417, at *5. Because there is insufficient evidence to sustain Osprey's claim of non-literal copyright infringement, Connatix's motion for summary judgment is granted as to this claim.[5]

**V. Conclusion**

For the foregoing reasons, Osprey's motion to exclude the testimony of William Rosenblatt and Brian Palmer is granted in part. The Court strikes paragraphs 33(a), 87, 96, 98, 200, and 208 of Rosenblatt's expert report. Osprey's motion to exclude expert testimony is otherwise denied.

Connatix's motion for summary judgment is GRANTED.

The Clerk of Court is directed to close the motions at Docket Numbers 79 and 90, to enter judgment in favor of Connatix, and to close this case.

Because this opinion and order contains information that is subject to a confidentiality order, the Clerk of Court is directed to file this unredacted version UNDER SEAL—PARTY VIEW ONLY.

The parties are directed to confer and submit jointly proposed redactions to this opinion and order within fourteen days of the date of this order.

SO ORDERED.

Dated: July 27, 2026
New York, New York

J. PAUL OETKEN
United States District Judge

[5] Because the Court grants summary judgment on the ground that Osprey has failed to adduce sufficient evidence to support its claims of copyright infringement, it declines to address whether Osprey expressly or impliedly licensed nStream to Connatix or whether estoppel precludes Osprey's claims of infringement. (*See* Mem. at 14-19.)