UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OSPREY MEDIA, LLC,
Plaintiff,

-v-

CONNATIX NATIVE EXCHANGE, INC.,
Defendant-.

24-CV-1662 (JPO)

**SEALED**
OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Before the Court is a motion for attorney's fees filed by Defendant Connatix Native Exchange, Inc. ("Connatix"). (ECF No. 126.) Connatix seeks reimbursement for the attorney's fees that it incurred in litigating this copyright action brought by Plaintiff Osprey Media, LLC ("Osprey"). For the reasons that follow, Connatix's motion for attorney's fees is granted as modified.

## I. Background

The Court assumes familiarity with the factual and procedural background of this case as set forth in its July 27, 2026 opinion and order and recites that background only insofar as it is relevant to the pending motion. (*See generally* ECF No. 114.)

Joseph Velardo, the President and Co-Founder of Osprey, hired a programmer, Jagadish Kamath, to create the nStream software, which "stitches" together two shorter advertisements to form a single, longer advertisement. (*Id.* at 1-2.) Kamath completed the nStream code in April 2021 and transferred the copyright to the program to Osprey in January 2024. (*Id.* at 2.) Connatix, a leading advertising company, offered Velardo a job—which he accepted—in September 2022. (*Id.*) The offer mentioned plans to integrate nStream with Connatix as soon as possible, and Velardo agreed to connect Kamath with the Connatix team. (*Id.*) At some point

after starting at Connatix in October 2022, Velardo gave access to nStream's source code to a Connatix engineer, who then developed an advertising platform called the "CTV Ad Exchange" using a different language than the one in which the nStream code was written. (*Id.* at 2-3.) In 2023, Connatix decommissioned nStream and used only the CTV Ad Exchange program for its TV streaming advertising, and it fired Velardo in September of that year. (*Id.* at 3.) Velardo registered the copyright in the nStream source code on behalf of Osprey in February 2024. (*Id.*)

Osprey filed this action against Connatix on March 5, 2024, asserting that the CTV Ad Exchange infringed Osprey's nStream copyright. (*Id.*; *see also generally* ECF No. 1.) The Court granted Connatix's motion for summary judgment on July 27, 2026. (ECF No. 114.) Osprey filed a notice of appeal from this decision on August 17, 2026. (ECF No. 124.) Connatix filed the instant motion for attorney's fees on August 17, 2026 (ECF No. 126), along with an accompanying memorandum of law (ECF No. 128 ("Mem.")). Osprey opposed the motion under seal on August 31, 2026 (ECF No. 134 ("Opp.")), and Connatix filed a reply on September 8, 2026 (ECF No. 139 ("Reply")).

## II. Legal Standard

Copyright law provides for the recovery of "a reasonable attorney's fee" as costs by a "prevailing party," to be awarded by "the court in its discretion." 17 U.S.C. § 505. In exercising that discretion, the district court should consider the following "nonexclusive factors": "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (cleaned up). "[O]bjective reasonableness" is "an important factor in assessing fee applications," though not a "controlling one." *Id.* at 208.

## III. Discussion

As a threshold matter, Connatrix suggests that, given Osprey's appeal of the Court's order granting summary judgment to Connatrix (*see* ECF No. 124), "the Court may wish to defer its decision on this motion until the resolution of Osprey's appeal." (Reply at 13.) The Court declines to do so. As the issue is already fully briefed, "resolution of this issue [at this stage] is the most efficient use of judicial resources" because "[t]he Court can dispose of this issue now rather than wait and decide it at even greater remove from determination of the merits issue." *Estevez v. Berkeley Coll.*, No. 18-CV-10350, 2022 WL 1963659, at *3 (S.D.N.Y. June 6, 2022). Additionally, because Osprey has already appealed this Court's summary judgment order and Connatrix's "entitlement to attorneys' fees . . . implicates the merits," it would "be more efficient for the [Second] Circuit to review both the merits and the attorneys' fee award at the same time" should Osprey choose to appeal this order as well. *Scanner Techs. Corp. v. Icos Vision Sys. Corp., N.V.*, No. 00-CV-4992, 2007 WL 3284028, at *2 (S.D.N.Y. Nov. 1, 2007) (Chin, J.).

The Court thus analyzes each of the *Kirtsaeng* factors in turn.

### A. Reasonableness

"[T]he courts of this Circuit have generally concluded that only those claims that are clearly without merit or otherwise patently devoid of legal or factual basis ought to be deemed objectively unreasonable." *Psihoyos v. John Wiley & Sons, Inc.*, No. 11-CV-1416, 2013 WL 1285153, at *3 (S.D.N.Y. Mar. 29, 2013) (quotation marks omitted). Connatix most prominently contends that Osprey's decision to litigate was objectively unreasonable because it knew that application of the "abstraction-filtration-comparison" ("AFC") test was required for its non-literal infringement claim, but declined to provide an analysis thereof, expert or otherwise. (Mem. at 10-12.) Osprey retorts that this failure was reasonable or, in the alternative, that it was reasonable to believe that its expert's testimony would satisfy the test. (Opp. at 11-14.)

The Court agrees with Connatix that Osprey acted objectively unreasonably in litigating this case by failing to offer any "evidence to the Court to indicate that an AFC test has been performed by its expert or that the record could otherwise support a finding of non-literal copyright infringement." (ECF No. 114 at 13.) Osprey even conceded this test was the correct one, hence its unsuccessful retroactive attempt to satisfy it in its opposition to Connatix's summary judgment motion. (ECF No. 102 at 20; *see also* ECF No. 114 at 12-13.) Osprey's position in its opposition to Connatix's motion for summary judgment was that expert testimony was not required to satisfy the test (ECF No. 102 at 20), which it maintains now (Opp. at 11).[1] But given that Osprey failed to offer *any* testimony or other evidence on the record that could satisfy the test (*see* ECF No. 114 at 13), the Court cannot credit this purported distinction to avoid a finding of objective unreasonableness.

Osprey alternatively argues that the expert testimony it did offer was enough to satisfy the test. (Opp. at 14-16.) Yet, as the Court made clear in its opinion and order granting summary judgment, Osprey failed to perform both the "filtration" step (or "point to evidence that would support a filtration analysis") and the "comparison" step, and it offered propositions entirely unsupported by citations regarding multiple steps. (ECF No. 114 at 12-13.) This approach to litigation stands in stark contrast to cases where courts have found the non-prevailing party's litigation conduct and choices objectively reasonable. *See, e.g.*, *Yang v. Mic Network, Inc.*, No. 18-CV-7628, 2020 WL 6562403, at *3 (S.D.N.Y. Nov. 9, 2020) (Nathan, J.) (finding no objective unreasonableness where plaintiff "made reasonable arguments under the

[1] Osprey also continues to insist that the AFC test need not apply. (Opp. at 12-14.) This position is both confusing, given Osprey's admission in its summary judgment opposition that it must (*see* ECF No. 102 at 20), and untenable, as the Court clearly held that the test was required for Osprey's non-literal infringement claim (ECF No. 114 at 10).

circumstances, cited applicable precedents, and gave reasoned explanations for why an action for copyright infringement should lie here," to the point where "the Court concluded that several [applicable] factors cut in [their] favor"), *aff'd*, No. 20-4097-CV, 2022 WL 906513 (2d Cir. Mar. 29, 2022). Osprey's position in this dispute was devoid of a reasonable legal basis. The reasonableness prong, though not determinative, thus weighs heavily in favor of awarding attorney's fees to Connatix.

### B. Frivolousness and Motive

A complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "This factor clearly overlaps significantly with the consideration of objective unreasonableness, although the Second Circuit has indicated that the two factors are not necessarily coextensive." *Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*, No. 14-CV-9270, 2017 WL 3393850, at *4 (S.D.N.Y. Aug. 4, 2017) (Sullivan, J.) (quotation marks omitted) (citing *Matthew Bender & Co. v. W. Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001)).[2] "A party is improperly motivated where it asserts claims not because of their inherent merit, but rather because the party seeks to knowingly gamble on an unreasonable legal theory in order to achieve a secondary gain," such as "the leveraging of a settlement." *Agence*

[2] There may be some daylight between the frivolousness inquiry, which assesses the potential success of the claim itself, and the reasonableness inquiry, which focuses on "the losing party's *position*" and thus factors in strategic choices made by counsel or the party. *Kirstaeng*, 579 U.S. at 199 (emphasis added). For instance, Osprey largely relied in its opposition to Connatix's summary judgment motion on a Connatix engineer's message to Velardo that he was "using nStream as a basis for the stitcher." (ECF No. 114 at 9 (quoting ECF No. 106-6 at 3).) While—as the Court held—this fact is not enough to establish infringement, there may be some meat to a Copyright Act claim against "a defendant who . . . admitted" during discovery that he was basing their product on plaintiff's. *Oppenheim v. Goldberg*, No. 23-CV-2645, 2024 WL 4252563, at *1 (S.D.N.Y. Sep. 20, 2024) (denying § 505 fee application where plaintiff relied on defendant's admission that he had done "something in the vein of illegality"). But absent further briefing from the parties on frivolousness, there is no basis for the Court to conclude that this claim, better argued, would have come closer to prevailing.

*Fr. Presse v. Morel*, No. 10-CV-2730, 2015 WL 13021413, at *5 (S.D.N.Y. Mar. 23, 2015) (Nathan, J.) (cleaned up).

Connatix seemingly collapses its frivolousness and motive analysis by arguing that the Osprey brought a "frivolous retaliatory claim" motivated by the frustrations of "an embittered terminated employee," based only on the basic fact that Connatix had terminated Velardo. (Mem. at 5; *see also id.* at 14 (arguing case was frivolous because it was brought by a "disgruntled employee[] terminated following poor performance"); *accord* Reply at 7.) Osprey does not contest this notion. (*See generally* Opp.) Though the mere fact of termination is not enough to show an improper motive, the overlap between the frivolousness factor and the unreasonableness factor further weighs in favor of granting Connatix's fee application.

**C. Compensation and Deterrence**

Fee awards under the Copyright Act should "advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994) (quotation marks omitted). Connatix argues that compensation "strongly favors" granting its fee application because it was "forced to expend substantial resources defending" against Osprey's copyright claim, especially given the complexity associated with software copyright cases such as this one. (Mem. at 12-13.) It further submits that deterrence "independently supports a fee award" to deter meritless claims like Osprey's, including specifically to "deter[] frivolous cases brought against employers by disgruntled employees terminated following poor performance." (*Id.* at 13-14.) Osprey offers no arguments regarding compensation or deterrence in its opposition. (*See generally* Opp.)

The Court agrees that compensation and deterrence favor an award of attorney's fees here. Given the unreasonableness of Osprey's legal position,[3] Connatix "must be compensated for being forced to defend against such a baseless action," and "failing to award attorneys' fees in such situations would invite others to bring similarly unreasonable actions without fear of any consequences." *Arclightz & Films Pvt. Ltd. v. Video Palace, Inc.*, No. 01-CV-10135, 2003 WL 22434153, at *3 (S.D.N.Y. Oct. 24, 2003) (cleaned up).

**D. Reasonableness of Attorney's Fees**

"Attorney's fees must be reasonable in terms of the circumstances of the particular case." *Matthew Bender*, 240 F.3d at 121 (quoting *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999)). Here, Connatix seeks attorney's fees of $909,030.00 for services provided by Pearl Cohen Zedek Latzer Baratz LLP (ECF 129-1 at 2) and $304,672.00 for services provided by Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") (ECF No. 129-2 at 2), for a total of $1,213,702.00 in fees. (*See generally* Mem.; ECF No. 129; Reply.)

Osprey contests the reasonableness of these fees on several grounds. Most prominently, it argues that Connatix's failure to offer "contemporaneous time records is fatal to its motion," despite WilmerHale's fixed fee agreement ($50,000 per month) with Connatix. (Opp. at 18-19.) Osprey further submits that "Connatix has made no attempt to distinguish the time that it has spent on non-copyright claims," such as Connatix's counterclaim for breach of contract and third-party fraud action against Velardo, and Section "505 authorizes attorneys' fees shifting only for a copyright claim." (*Id.* at 21-22.) Connatix responds that the relevant inquiry is that the attorneys *kept* contemporaneous time records on which the fee application is based, not that

[3] The Court bases its compensation and deterrence conclusion on this unreasonableness—not on Connatix's argument, offered without citations, that a fee award here is essential to deter claims from terminated employees seeking revenge. (*See* Mem. at 14.)

they necessarily *provide* them to the Court (*see* Reply at 9), and that apportionment only to the copyright claims is "not necessary where, as here, all claims were based on a common core of facts and related legal theories" (*id.* at 11 (quotation marks omitted)).

While Connatix certainly could have submitted more detailed time records that would have eased the Court's job in determining the reasonableness of the requested fees, it nonetheless has submitted sufficient documentation showing "for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Connatix's decision not to include the contemporaneous time records on which its application is based is therefore not, as Osprey contends, fatal to its motion. However, "[t]he lodestar figure" provided by attorneys seeking fees under the Copyright Act "may be adjusted upward or downward 'to take account of such subjective factors as the risk and complexity of the litigation and the quality of the representation.'" *Scanlon v. Kessler*, 23 F. Supp. 2d 413, 416 (S.D.N.Y. 1998) (quoting *Cohen v. W. Haven Bd. of Police Comm'rs,* 638 F.2d 496, 505 (2d Cir. 1980)); *see also Barclays Capital Inc. v. Theflyonthewall.com*, No. 06-CV-4908, 2010 WL 2640095, at *4 (S.D.N.Y. June 30, 2010) ("Courts may reduce the number of hours in a fee application where the time entries submitted by counsel are too vague to sufficiently document the hours claimed."). Courts may also adjust the requested lodestar under § 505 downwards where the fee application "fails to adequately specify which tasks relate to which claims," given that "plaintiff should only recover expenses for work done on the meritorious copyright infringement claim." *Scanlon*, 23 F. Supp. 2d. at 417 (citing *Knitwaves v. Lollytogs*, 71 F.3d 996, 1012 (2d Cir. 1995)).

In light of the lack of detail in Connatix's submission and its failure to disaggregate time spent on the Copyright Act claims versus the non-copyright claims in this case (even if such

disaggregation would be difficult given the claims' shared nucleus), the Court adjusts the request downward by 25% and therefore finds that an award of $910,276.50 in fees is appropriate. *See Mawere v. Citco Fund Servs., (USA) Inc.*, No. 09-CV-1342, 2011 WL 6779319 (S.D.N.Y. Sep. 16, 2011) ("[W]hen submitted time records do not provide descriptions sufficiently detailed to enable the Court to determine the reasonableness of the expended time, courts in this Circuit have applied a percentage reduction—frequently in the range of 20 to 30 percent—to the claimed attorney hours."), *report and recommendation adopted*, No. 09-CV-1342, 2011 WL 6780909 (S.D.N.Y. Dec. 27, 2011).

## IV. Conclusion

For the foregoing reasons, Connatix's motion for attorney's fees is GRANTED. Connatix is hereby awarded $910,276.50 in attorney's fees.

The Clerk of Court is directed to close the motion at Docket Number 126.

The Clerk of Court is directed to file this unredacted opinion and order UNDER SEAL—PARTY VIEW ONLY.

The parties are directed to confer and to file jointly proposed redactions to this opinion and order within two weeks from the date of this opinion and order.

SO ORDERED.

Dated: November 10, 2026
New York, New York

J. PAUL OETKEN
United States District Judge